Filed 4/23/26  P. v. Russell CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COREY THEODORE RUSSELL,<br><br>    Defendant and Appellant. | B345716<br><br>(Los Angeles County<br>Super. Ct. No. YA052902) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Corey Theodore Russell, in pro. per.; William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————————

Corey Theodore Russell appeals from a postjudgment order following a *Franklin*[1] proceeding at which the superior court accepted a mitigation packet regarding Russell and ordered the packet forwarded to the California Department of Corrections and Rehabilitation (CDCR) for a future youth offender parole hearing. We appointed counsel to represent Russell on appeal. After reviewing the record counsel for Russell filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 that did not identify any arguable issues. Russell filed a supplemental brief arguing he was entitled to resentencing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Russell's Conviction of Second Degree Murder*

We described the factual background of this case in Russell's direct appeal. (See *People v. Russell* (July 20, 2005, B172100) [nonpub. opn.].) On September 4, 2002, Samuel Briggs was having a family birthday party in Los Angeles. Russell, who was 21 years old at the time, arrived at the party and became involved in an argument with another partygoer. The two argued loudly, and after a few minutes Russell announced he was "going home to get his shit," which bystanders understood to mean that Russell was going home to get a weapon. Russell rode away on his bicycle.

Approximately 10 minutes later Russell returned to the party. Several party attendees spoke with Russell outside to ensure that there would be no problems and invited Russell back into the party. After Russell responded, "Everything [is] cool," and the others turned to return to the party, Russell began firing

---

[1] *People v. Franklin* (2016) 63 Cal.4th 261.

2

a gun. A bullet hit Briggs in the back, killing him. Russell fled to his nearby home, where he hid in the attic until the police apprehended him.

A jury convicted Russell of second degree murder (Pen. Code, § 187, subd. (a))[2] and found true the allegation that he personally and intentionally discharged a firearm, causing death. (§ 12022.53, subd. (d)). The trial court sentenced Russell to 15 years to life for the murder and 25 years to life for the firearm enhancement, for a total sentence of 40 years to life in prison. This court affirmed the judgment in a 2005 unpublished decision. (*People v. Russell*, *supra*, B172100.)

B.      *The Superior Court Holds a* Franklin *Proceeding*

Because Russell was 21 years old when he committed the murder, and given his particular sentence, he is eligible for release on parole at a youth offender parole hearing during his 25th year of incarceration. (See § 3501, subds. (a)(1)(B), (b)(3).) It appears he will be eligible for such a hearing in 2027.

On December 1, 2023 Russell filed a motion to augment the record to include mitigating evidence pertaining to youth-related factors pursuant to section 1203.01 and *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). *Franklin* authorized postjudgment evidence preservation proceedings at which prisoners eligible for youthful offender parole hearings can place on the record mitigating evidence that "demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Franklin*, at p. 284; see *In re*

---

[2]      All statutory references are to the Penal Code.

*Cook* (2019) 7 Cal.5th 439, 449-450, 452-453 (*Cook*); *People v. Howard* (2021) 74 Cal.App.5th 141, 149.)

The superior court appointed counsel for Russell and conducted a *Franklin* proceeding on March 26, 2025. At the *Franklin* proceeding, the court indicated that "[t]he case is here for submission of the *Franklin* package to go to [CDCR] for the Parole Board's consideration."

Defense counsel for Russell indicated that the submitted packet included "a mitigation brief, a defense brief of my making. . . . I also attached two expert reports, a forensic social worker, and a 730 expert. In my brief I . . . included a synopsis and review and analysis pursuant to interviews and reviews of voluminous CDCR documents. I had ordered and received, during this process, all medical, mental health, central file, and I even managed to [obtain] past juvenile hard copy documents. All totaled over 30,000 documents. Around 25,000 were the medical/mental health [documents]. I personally reviewed all those documents. Within the central file I found the previous first *Franklin* brief that had been filed back in Torrance under Judge Carter. I reviewed that also. I then prepared a summary of each separate review as to the medical, central file, and juveniles and . . . sen[t] that summary to the experts with the exact pages of the most relevant to review – they, of course, can review additional pages – and that assisted them in their analysis and review. Their reports are attached to this mitigation brief and total[] 51 pages."

The court responded, "I'm not aware [of any] attorney putting in this much time and effort into a *Franklin* package, so job well done. . . . Then that will be submitted to [CDCR]. There are no further hearings on the *Franklin* matter."

4

Russell appealed from the submission of the *Franklin* packet claiming that he received ineffective assistance of counsel, violations of the Sixth and Fourteenth Amendments, and violation of due process.

## DISCUSSION

We appointed counsel to represent Russell on appeal. After reviewing the record, appointed counsel did not identify any arguable issues and so informed us. Counsel requested that we determine whether this matter is appealable because Russell's *Franklin* motion "was not denied." Counsel advised Russell on January 15, 2026 that he was filing a brief stating he was unable to find any arguable issues and that Russell had a right to file a supplemental brief. Counsel also sent Russell a copy of the brief and the record on appeal.

On February 9, 2026 we received a handwritten two-page supplemental brief from Russell contending the superior court should have dismissed his sentencing enhancement. As appellate counsel failed to raise this issue, Russell also argues that he was provided ineffective assistance of counsel. Attached to the supplemental brief is an 18-page form motion requesting a *Franklin* proceeding and the appointment of counsel.[3]

---

[3] To the extent Russell requests we consider this "new" *Franklin* motion for the first time on appeal, we decline to do so. Such motions must be filed in the superior court in the first instance. (See *Cook, supra*, 7 Cal.5th at pp. 452, 458.) In any event, we note the grounds asserted in the motion are inapplicable to Russell because they pertain to defendants sentenced to life without parole. Further, Russell has already

5

Russell's primary contention is that in connection with the *Franklin* proceeding he was entitled to a resentencing, and specifically, that the court should have stricken his 25-years-to-life enhancement under section 12022.53, subdivision (d), based on retroactive changes to the criminal sentencing statutes. However, granting and conducting a *Franklin* proceeding did not reopen Russell's final judgment or allow resentencing. (See *Cook*, *supra*, 7 Cal.5th at pp. 450-451 ["Neither the entitlement to a youth offender parole hearing, nor the evidence preservation process 'disturb[s] the finality of state convictions' "]; *People v. White* (2022) 86 Cal.App.5th 1229, 1238. fn. omitted ["a *Franklin* hearing does not reopen a final judgment or sentencing. [Citation.] Rather, it is an 'evidence preservation process' to gather evidence for the eventual determination of parole"].) "When a youth offender receives a *Franklin* hearing, the offender 'need not be resentenced' because the sentence remains valid," and the superior court does not have jurisdiction to reconsider the offender's sentence. (*White*, at pp. 1238-1239.) Thus, Russell was not entitled to resentencing.

To the extent Russell's supplemental brief further argues that he received ineffective assistance of appellate counsel because his counsel failed to raise the issues Russell discusses in his supplemental brief, his appellate counsel's failure to raise those issues was not deficient representation and did not

---

been afforded the relief he seeks: the superior court appointed counsel for Russell and conducted a *Franklin* proceeding at which his counsel submitted voluminous youth-related mitigation evidence to supplement the record. Russell does not complain that the submission was inadequate or incomplete or that it was not transmitted to the CDCR.

prejudice Russell, because Russell's contentions in his supplemental brief lack merit.  (See *People v. Lucero* (2000) 23 Cal.4th 692, 732 [counsel does not render deficient performance by failing to raise meritless issues].)

## DISPOSITION

The order forwarding his *Franklin* packet to CDCR is affirmed.


STONE, J.

We concur:


MARTINEZ, P. J.


FEUER, J.

7